**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

ARIEL KINDROW,

    Plaintiff,

v.                                                                                           Case No. 21-10968

JOCELYN BENSON and the MICHIGAN
DEPARTMENT OF STATE,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT BENSON'S MOTION TO DISMISS**

Plaintiff Ariel Kindrow brings this *pro se* action under 42 U.S.C. § 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment. (ECF No. 1, PageID.5-8.) She claims that Defendant Jocelyn Benson, the Michigan Secretary of State, violated her constitutional rights by arbitrarily revoking her driver's license.[1] (*Id.*) She names Defendant in both her official and individual capacities. (*Id.*, PageID.2.) In addition, Plaintiff alleges that the state law granting Defendant the authority to initiate investigations and subsequently revoke driver's licenses is unconstitutionally vague. (*Id.*, PageID.5-8.) She seeks declaratory relief, compensatory damages, and punitive damages. (*Id.*, PageID.9.)

Before the court is Defendant's motion to dismiss, which claims, *inter alia*, that Plaintiff has failed to state a claim upon which relief can be granted and that Defendant

---

[1] The relevant statutes variously refer to this as an "operator's permit" or "operator's license." The term "driver's license" is commonly accepted and is used here for consistency.

is entitled to qualified immunity. (ECF No. 10.) Plaintiff filed a response.[2] (ECF No. 3.) Having reviewed the parties' briefs, the court finds a hearing to be unnecessary. E.D. Mich. LR 7.1(f)(2).

## I. BACKGROUND

In a motion to dismiss, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The following facts are either alleged in Plaintiff's complaint or agreed upon by the parties.

On October 23, 2019, as a result of a series of almost three dozen traffic enforcement encounters with numerous police officers and a referral from the Eastpointe Police Department, the Michigan Department of State revoked Plaintiff's license. (ECF No. 1, PageID.1-2.) At the time, the Department of State claimed that "there [was] reason to believe she [was] unable to safely operate a motor vehicle due to a mental or physical disability" or otherwise experienced episodes that made it unsafe for her to drive. (*Id.*, PageID.4.) Plaintiff provided the agency with medical records, which included a physician's statement that he had been treating Plaintiff since May 2016 and that he believed Plaintiff was healthy with no major medical problems; the statement also indicated there were no concerns with her capability to safely operate a motor vehicle. (*Id.*, PageID.15-17.)

After investigating the matter and reviewing the numerous encounters she experienced with police evidencing an inability to drive safely, the Department of State

---

[2] The court dismissed Plaintiff's claims against the Michigan Department of State without prejudice. (ECF No. 4.)

2

found "good cause" to revoke Plaintiff's license for one year, explaining that "it would be in the best interest of traffic safety to revoke [her] license." (*Id.*, PageID.18-21.)

Per statutory protocol, Plaintiff appealed the revocation to the Macomb County Circuit Court. (*Id.*, PageID.3, 22-30.) The circuit court determined that although Plaintiff's physician concluded that "she did not suffer from any medical conditions that would prevent her from safely operating a motor vehicle . . ., physical infirmity is but one of the bases" for conducting a reexamination of a driver's competence to operate a motor vehicle. (*Id.*, PageID.42-43.) Noting that "the record is replete with [Plaintiff's] multiple moving violations" and that she had not negated a finding that her "underlying driving behavior" was unlawful or unsafe, the circuit court found the Department of State's determinations were "supported by the evidence" and "not arbitrary, capricious . . . or an abuse of discretion." (*Id.*, PageID.43.) The court upheld the one-year revocation of her license. (*Id.*)

On March 22, 2021, an administrative hearing was held to determine if Plaintiff's driver's license should be reinstated. (*Id.*, PageID.4-5.) Following the hearing, during which Plaintiff presented additional medical records indicating she was capable of driving safely, the Department of State found "good cause to remove the revocation and restore driving privileges." (*Id.*, PageID.51.) Plaintiff, in response, now claims that the very restoration of her driver's license is tantamount to Defendant admitting that her previous revocation had been "arbitrarily put in place, with no legal . . . foundation." (*Id.*, PageID.5.) She seeks redress for the approximately one year she spent without a driver's license. (*Id.*)

3

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing motions under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

4

## III. DISCUSSION

Plaintiff brings two counts against Defendant "in her individual capacity for damages" and "in her official capacity for declaratory relief."[3] (ECF No. 1, PageID.2.) Count I alleges that the state law delegating authority to Defendant to reexamine or investigate "incompetent drivers" is unconstitutionally vague—including the provision which permits the subsequent revocation of an individual's driver's license "upon good cause." (*Id.*, PageID.5-7 (citing Mich. Comp. Laws § 257.320(1)-(2).) Count II apparently brings a claim directly against Defendant in her individual capacity for the various "negative impacts on her life" that arose from the sixteen-month period Plaintiff was without a driver's license. (*Id.*, PageID.7-8.) Defendant contends that Plaintiff has failed to state a claim upon which relief can be granted and that she is entitled to qualified immunity. (ECF No. 10, PageID.77-79, 81-82.) The court will address each count of Plaintiff's complaint separately.

### A. Count I – No Due Process Violation

Count I, which the court construes as a claim against Defendant in her official capacity, ostensibly requests a declaratory judgment that Mich. Comp. Laws § 257.320 is "unconstitutionally vague and thus violates the Due Process clause of the Fourteenth Amendment." (ECF No. 1, PageID.9.) Plaintiff argues that the "vague" statute effectively gives Defendant "unrestricted" and arbitrary power, as there is no "fair notice" of the requisite standard of conduct to comply with the statute. (*Id.*, PageID.5-8.) While Plaintiff

---

[3] Any claims against Defendant in her official capacity for monetary damages would be barred by the Eleventh Amendment. *See Crabbs v. Scott*, 786 F.3d 426, 428-29 (6th Cir. 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) ("Damages actions against state officers in their official capacities count as lawsuits against the State.").

5

does not expressly state whether she attacks the statute as unconstitutional on its face or as applied, she seems to clarify in her response that she is not alleging the statute itself is unconstitutional; rather, she contends the law is unconstitutional as it was applied to her. (ECF No. 13, PageID.87 ("The Defendant . . . failed to follow the relevant statute as written. . . . Plaintiff is arguing that there is no rational basis for the arbitrary, unequal, malicious [non]-enforcement of said law against her. . . . There was simply no rational basis for Defendant to continue withholding Plaintiff's driver's license after [she] satisfied all statutorily-enumerated requirements to get her license back.").)

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Supreme Court's vagueness doctrine has two primary goals: (1) "to ensure fair notice to the citizenry" and (2) "to provide standards for enforcement by the police, judges, and juries." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995). In light of these goals, courts have developed a two-part inquiry to determine if a statute is unconstitutionally vague. "A statute is unconstitutionally vague only if it either (1) 'defines [the] offense in such a way that ordinary people cannot understand what is prohibited,' or (2) 'encourages arbitrary or discriminatory enforcement.' *United States v. Kettles*, 970 F.3d 637, 650 (6th Cir. 2020) (quoting *United States v. Avant*, 907 F.2d 623, 625 (6th Cie. 1990)). "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment," and the Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties." *Vill. of Hoffman Estates. v. Flipside, Hoffman Estates., Inc.*, 455 U.S. 489, 498-99 (1982). Here, because Plaintiff claims the statute is vague as applied to her, she can

prevail only if the statute "is so vague that it failed to provide [her] with 'sufficient warning'" that her conduct would violate the law.[4] *See Kettle*, 970 F.3d at 650; *see also Johnson v. Morales*, 946 F.3d 911, 929 (6th Cir. 2020) (finding statute was not unconstitutionally vague where the challenging party engaged in the "type of conduct plainly concern[ing]" the statutory requirements); *United States v. Sittenfeld*, 522 F. Supp. 3d 353, 377 (S.D. Ohio 2021).

Plaintiff complains that Mich. Comp. Laws § 257.320 gives Defendant power to investigate or examine an individual upon gaining a mere "reason to believe that the person is incompetent to drive a motor vehicle," and permits Defendant, based upon "good cause . . . [and] subject to an investigation or reexamination," to revoke a driver's license. Plaintiff claims she has a "perfect driving record"—in large part because she has not received any "points"[5] on her license. (ECF No. 1, PageID.7-8; ECF No. 13, PageID.87.) Considering the absence of any points on her license, she contends that it

---

[4] Nothing in the contested statute either *requires* or *prohibits* any particular conduct, but rather empowers the Michigan Secretary of State to investigate, reexamine, and potentially (upon good cause and subject to an investigation or reexamination) revoke the license of individuals who are suspected of being incompetent drivers. *See* Mich. Comp. Laws § 257.320; *Parsons v. U.S. Dep't of Justice*, 211 F. Supp. 3d 994, 1003 (E.D. Mich. 2016) (holding that there is no vagueness as to "what the law requires" where a government report did not "require anything") (Cleland, J.); *Hartman v. Acton*, 499 F. Supp. 3d 523, 534-35 (S.D. Ohio 2020) (dismissing the plaintiff's void-for-vagueness challenge to an Ohio statute because the statute did not criminalize, prohibit, or compel any conduct, but merely delegated an agency with authority over particular affairs). Nonetheless, the court will assume for purposes of this motion that the word "incompetent" imposed some obligation on Plaintiff to drive with at least some level of skill. *See* Mich. Comp. Laws § 257.320.

[5] In Michigan, drivers accumulate "points" on their license for convictions of traffic violations and other vehicle-related offenses, the accumulation of which may lead to, among other consequences, revocation of one's driver's license. *See* Mich. Comp. Laws § 257.320a.

7

was impossible for her to know how to comply with the statute and avoid revocation. (ECF No. 1, PageID.7-8; ECF No. 13, PageID.87.)

But Plaintiff's complaint is clear: she had sufficient warning that her conduct was a basis for an investigation into her competence relative to driving abilities, with the potential of having her driver's license revoked—even without any officially documented points on her license. Her claim of perfection in the arena of motor vehicle operation is true only if one squints hard and looks past more than thirty-two contacts with a variety of police officers for traffic violations between 2016 and 2019. (ECF No. 1, PageID.40-41.) Plaintiff routinely demonstrated problematic (and often dangerous) driving tendencies. Her interactions with police included, among other things, citations for "[d]riving [the] wrong way on a one-way street" and multiple investigations into whether Plaintiff was driving while intoxicated. (*Id.*) In fact, her "driving privileges had previously been suspended . . . due to repeated unsafe driving behavior." (*Id.*, PageID.41.) Clearly, a person of ordinary intelligence and perception would have notice that this conduct constituted the behavior of an "incompetent driver," which justifies reexamination and investigation of her driving privileges;[6] the statute complained of is not "unconstitutionally vague as applied to [t]his particular case." *Kettles*, 970 F.3d at 650; *accord Johnson*, 946 F.3d at 929. Thus, taking all of the facts alleged in Plaintiff's complaint as true, she is not entitled to relief. *Ashcroft*, 556 U.S. at 678.

---

[6] The plain meaning of the common English word "incompetent" is not difficult to ascertain: an "incompetent" driver is one who "lack[s] the qualities needed for effective action" or is otherwise "unable to function properly." *See Incompetent*, Merriam-Webster Dictionary (last visited November 17, 2021), https://www.merriam-webster.com/dictionary/incompetent.

8

### B. Count II – Qualified Immunity

Count II, which the court construes as a claim for damages against Defendant in her individual capacity, alleges that Defendant violated the Fourteenth Amendment Due Process Clause by revoking her license. (ECF No. 1, PageID.8.) She claims she suffered "many negative impacts," including the loss of "job and business opportunities . . . due to lack of transportation." (*Id.*) Defendant raises a qualified immunity defense. (ECF No. 10, PageID.81.)

Qualified immunity protects government officials for "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To "shield officials from harassment, distraction, and liability when they perform their duties reasonably," courts have devised a two-part test to protect government officials from civil litigation. *Id.* Courts consider: "(1) whether the alleged facts . . . show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established." *Rieves v. Town of Smyrna,* 959 F.3d 678, 695 (6th Cir. 2020). The prongs of the test may be analyzed in either order. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (citing *Pearson*, 555 U.S. at 236).

"A right is clearly established when a reasonable officer would know—in the given situation and with the information known to him at the time—that his conduct violated that right." *Id.* Stated another way, "[i]f reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies." *Id.* "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Colombia v.*

9

*Wesby*, 138 S.Ct. 577, 590 (2018). "[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "'[A] body of relevant case law' is usually necessary to 'clearly establish' the [legal] answer." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Some courts deem it inappropriate to grant a 12(b)(6) motion on the basis of qualified immunity. *See, e.g.*, *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (cautioning district courts on early dismissal of claims pursuant to qualified immunity); *but see Crawford*, 15 F.4th at 763 (explaining that it is "at best imprecise" to deem it "generally inappropriate" to dismiss a case on qualified immunity grounds before discovery). "But this is only a 'general preference,' not an absolute one. . . . [And] sometimes [qualified immunity] [is] best resolved in a motion to dismiss," particularly where the complaint itself establishes the defense. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761-62 (6th Cir. 2020) (quoting *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)); *accord Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) ("[D]ismissal . . . is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity."); *Johnson v. Moseley*, 790 F.3d 649, 657 (6th Cir. 2015) (reversing a district court's denial of qualified immunity at the pleading stage). Indeed, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Crawford*, 15 F.4th at 760 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). In short, "[i]f, taking all the facts as true and reading

all inferences in the plaintiff's favor, the plaintiff has not plausibly show[n] a violation of his clearly established rights," then the state official is entitled to immunity. *Siefert*, 951 F.3d at 762.

Where officials such as a secretary of state "implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Keweenaw Bay Indian Cmty. v. Khouri*, ---F. Supp. 3d ----, 2021 WL 2936439 (W.D. Mich. 2021). "State legislators swear to uphold the state and federal constitutions, . . . and a presumption of constitutionality accompanies their enactments, . . . a presumption on which executive officials generally may depend in enforcing the legislature's handiwork." *Id.* (internal citations omitted); *accord Mich. Interlock, LLC v. Alcohol Detection Sys., LLC*, 802 F. App'x 993, 1003 (6th Cir. 2020)

However, some statutes may be "so grossly and flagrantly unconstitutional" that any reasonable official would decline to enforce them; officials that do enforce such statutes are not entitled to qualified immunity. *See Vaduva v. City of Xenia*, 780 F. App'x 331, 337 (6th Cir. 2019) (quoting *Citizens*, 810 F.3d at 442). For example, qualified immunity would not protect an official for enforcing a statute that permitted arrest of a citizen for "engaging in 'political speech during a democratic assembly.'" *Id.* (quoting *Leonard v. Robinson*, 477 F.3d 347, 359 (6th Cir. 2007)).

Both claims against Defendant in her individual capacity must be dismissed. "At the time [the Michigan Secretary of State] acted, no court had declared the Michigan

11

statute unconstitutional, and [she] acted reasonably in enforcing it." *Mich. Interlock,* 802 F. App'x at 1002 (citing *Citizens*, 810 F.3d at 440-41). Here, Plaintiff clarifies in her response that because Defendant has "sole power to suspend and reinstate driver's licenses," Defendant is personally liable for the harm suffered by Plaintiff. (ECF No. 13, PageID.88.) Yet, Plaintiff has failed to cite a case denying qualified immunity "to a public official who enforced a properly enacted statute that no court had invalidated," *Citizens*, 810 F.3d at 441, or a case in which a court held unconstitutional a similar law. Defendant, as Michigan's Secretary of State, acted reasonably in administering a statute that no court had struck down.

Moreover, the statute at issue, Mich. Comp. Laws § 257.320, certainly cannot be characterized as "grossly and flagrantly unconstitutional," especially where it affords notice to individuals being investigated for their apparent incompetency to operate a vehicle. Additionally, the statute explicitly advises the secretary of state that it must have "good cause . . . [and act only] subject to an investigation or reexamination" to properly revoke a license. *Id.* And if the secretary of state does so, associated statutes mandate the official to "appoint a hearing officer to hear appeals from persons aggrieved by a final determination" which revokes a license. A claim that the statute is "grossly and flagrantly unconstitutional" is rendered even weaker in light of these guaranteed procedures. *See* Mich. Comp. Laws § 257.322. The court need not make an express finding as to the constitutionality of Defendant's actions since it is clear that she did not violate any clearly established right—she reasonably depended on a presumption that the statute was lawful. *See Citizens*, 810 F.3d at 440-41 (declining to address whether

12

there was a constitutional violation and instead ruling that the Ohio Secretary of State did not violate a clearly established right in enforcing a statute).

Thus, even assuming the factual allegations in the complaint are true, *Ashcroft*, 556 U.S. at 678, a reasonable official under these circumstances could nonetheless believe she was carrying out a valid, constitutional statute. Defendant is entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's complaint must be dismissed. Plaintiff has failed to allege that the statute at issue is unconstitutionally vague as applied to her. Moreover, any claim against Defendant in her individual capacity fails because Defendant's conduct is shielded by qualified immunity. Accordingly,

IT IS ORDERED that Plaintiff's complaint (ECF No. 1) is DISMISSED.

s/Robert H. Cleland          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 19, 2021, by electronic and/or ordinary mail.

s/ Lisa Bartlett for Lisa Wagner    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-10968.KINDROW.MotionToDismiss.MAZ.3.RHC.docx